ORIGINAL

1   SOMNATH RAJ CHATTERJEE (CA SBN 177019)
    SChatterjee@mofo.com
2   PATRICIA SVILIK (CA SBN 244026)
    PSvilik@mofo.com
3   CHRISTIE L. YANG (CA SBN 267983)
    ChristieYang@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105
    Telephone: 415.268.7000
6   Facsimile: 415.268.7200

7   JULIA HARUMI MASS (CA SBN 189649)
    JMass@aclunc.org
8   ACLU FOUNDATION OF NORTHERN CALIFORNIA
    39 Drumm Street
9   San Francisco, California 94111
    Telephone: 415.621.2493
10  Facsimile: 415.255.8437

11  VEENA B. DUBAL (CA SBN 249268)
    VeenaD@asianlawcaucus.org
12  ASIAN LAW CAUCUS
    55 Columbus Avenue
13  San Francisco, California 94111
    Telephone: 415.896.1701
14  Facsimile: 415.896.1702

15  Attorneys for Plaintiffs

16

17                      UNITED STATES DISTRICT COURT

18                    NORTHERN DISTRICT OF CALIFORNIA

19                        SAN FRANCISCO DIVISION

                                                              MEJ

20  THE AMERICAN CIVIL LIBERTIES UNION       Case No.    CV 10    3759
    OF NORTHERN CALIFORNIA, ASIAN LAW
21  CAUCUS, SAN FRANCISCO BAY
    GUARDIAN
22                                           **COMPLAINT FOR DECLARATORY
                  Plaintiffs,                AND INJUNCTIVE RELIEF;
23                                           VIOLATION OF THE FREEDOM OF
          v.                                 INFORMATION ACT**
24

25  FEDERAL BUREAU OF INVESTIGATION,

26                Defendant.

27

28

sf-2873324

## I.     INTRODUCTION

1.     The American Civil Liberties Union of Northern California, Asian Law Caucus, and the *San Francisco Bay Guardian* (collectively, "the plaintiffs"), file this action against the Federal Bureau of Investigation, including its field offices in San Francisco and Sacramento ("FBI") to enforce the public's right to information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  The plaintiffs allege as follows:

2.     Approximately five months ago, the plaintiffs sought the expedited processing and release of records concerning the investigation and surveillance of Muslim communities in Northern California from the FBI offices located in Winchester, Virginia; San Francisco, California; and Sacramento, California.  Although the FBI granted the plaintiffs' request for expedited processing, the FBI has failed to release any documents in response to the plaintiffs' FOIA requests.  By this action, the plaintiffs seek information from the FBI responsive to their FOIA requests and other appropriate relief.

## II.    PARTIES

3.     The plaintiff American Civil Liberties Union of Northern California ("ACLU-NC") is a regional affiliate of the American Civil Liberties Union, which is a national, non-profit, and non-partisan organization dedicated to protecting the civil liberties of all people and safeguarding of the basic constitutional rights to privacy, free expression, and due process.  The ACLU-NC is established under the laws of the State of California, and has its headquarters in San Francisco, California.  The ACLU-NC has a membership of approximately 50,000.  In support of its mission, ACLU-NC uses its communications department to disseminate information to the public about issues of concern to the ACLU-NC and the general public.

4.     The plaintiff Asian Law Caucus ("ALC") is a non-profit public interest organization that is incorporated under the laws of the State of California and has its headquarters in San Francisco, California.  The ALC works to promote, advance, and represent the legal and civil rights of the Asian and Pacific Islander communities.  A main component of ALC's work is to disseminate information of public interest to both the Asian Pacific American communities and the general public.

1        5.     The plaintiff *San Francisco Bay Guardian* ("*The Bay Guardian*") is a corporation

2   organized in the State of California with its headquarters in San Francisco, California. It is a

3   newspaper of general circulation and has the largest circulation of a newsweekly in Northern

4   California, with an audited weekly distribution of 100,000. *The Bay Guardian* is locally owned,

5   independent, and has been published continuously since 1966. *The Bay Guardian's* primary

6   activity is publishing or otherwise disseminating information to the public, and it is prepared to

7   publish appropriate articles concerning the FBI's surveillance based on information sought by the

8   FOIA requests at issue here.

9        6.     The defendant Federal Bureau of Investigation is a component of the United States

10   Department of Justice. The FBI is an agency within the meaning of 5 U.S.C. § 552(f). The FBI

11   has its headquarters in Washington, D.C., and field offices all over the country, including

12   San Francisco and Sacramento, California.

13   **III.    JURISDICTION**

14        7.     This Court has subject matter jurisdiction over this action and personal jurisdiction

15   over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has

16   jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346.

17   **IV.    VENUE AND INTRADISTRICT ASSIGNEMENT**

18        8.     Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C.

19   § 1402. The plaintiffs have their principle places of business in this district.

20        9.     Assignment to the San Francisco division is proper pursuant to Local Rule 3-2(c)

21   and (d) because a substantial portion of the events giving rise to this action occurred in this

22   district and division. The plaintiffs ACLU-NC, ALC, and *The Bay Guardian* each have their

23   headquarters in San Francisco, California.

24   **V.    FACTUAL ALLEGATIONS**

25        **A.    THE FBI'S SURVEILLANCE OF MUSLIM COMMUNITIES IS A
26             MATTER OF SIGNIFICANT PUBLIC INTEREST**

27        10.     The government's surveillance of individuals and groups in Muslim communities

28   is a matter of significant public interest both to the members of Muslim communities and to the

2

1   public at large.  According to a 2007 survey by the Pew Research Center, there are approximately

2   2.35 million Muslims living in the United States.  Michael B. Farrell, "Fort Hood Shootings: US

3   Muslims Feel New Heat," *Christian Science Monitor*, Nov. 17, 2009.  The government's

4   surveillance raises significant public issues, such as the following:  (1) The impact of the

5   surveillance on the civil liberties of individuals and groups targeted by the surveillance, including

6   the impact on fundamental First Amendment rights to free exercise of religion, freedom of

7   association, and freedom of expression; and (2) The impact of certain government surveillance

8   tactics on U.S. national security, including potential harm to community relationships that are

9   important to furthering safety and national security.  The media has widely reported on these

10   issues.  For example:

11          11.     On December 18, 2009, the *New York Times* reported that "Several high-profile

12   cases in which informers have infiltrated mosques and helped promote plots . . . have sown a

13   corrosive fear among [Muslim-Americans] that FBI informers are everywhere, listening."  Paul

14   Vitello and Kirk Semple, "Muslims Say FBI Tactics Sow Anger and Fear," *New York Times*,

15   Dec. 18, 2009.

16          12.     A month later, the *New York Times* reported that President Barack Obama had

17   ordered national security officials "to develop a plan 'that addresses the unique challenges posed

18   by lone recruits,' a reference to Muslim individuals who become extremists but aren't formal

19   members of any group."  Free Press Staff Writer, "Calls for Surveillance Rise With Jump in U.S.

20   Terrorism Cases," *Detroit Free Press*, Jan. 17, 2010.

21          13.     The *Christian Science Monitor* recently reported, "Many Muslim[] Americans are

22   concerned by news that paid FBI informants . . . have been targeting impressionable Muslim

23   Americans to incite and then entrap them.  The Muslim community is also concerned by reports

24   that law enforcement agents are coercing Muslim Americans to serve as informants in exchange

25   for immigration ease."  Further, the *Christian Science Monitor* warned, "[F]ear within

26   communities can cut off the goodwill and sources of information needed to prevent another

27   attack."  Alejandro J. Beutel, "Muslim Americans and US Law Enforcement: Not Enemies, But

28   Vital Partners," *Christian Science Monitor*, Dec. 30, 2009.

3

14.     In January 2010, the *Detroit Free Press* published an article about the "growing concern among Muslims and civil rights advocates about undercover surveillance in religious institutions," and the concern that "using informants in mosques infringes on the constitutional right to free assembly and worship." Niraj Warikoo, "Deadly FBI Raid of Detroit Mosque Prompts Concern Over Informants: Muslims, Civil Rights Advocates Decry Tactic," *Detroit Free Press*, Jan 17, 2010; Niraj Warikoo, "Informants Amid the Faithful," *Detroit Free Press*, Jan. 17, 2010.

15.     The media has also reported a chilling effect that government surveillance has had on members of Muslim communities with regard to religious practices and to cooperation with the FBI in counterintelligence. The *Christian Science Monitor* reported:

> Many Muslim groups accuse the FBI and other counterterrorism agents of using overly aggressive tactics to strong-arm mosque attendees into becoming informants. Others say Muslims are often victims of racial profiling.
>
> The scrutiny has created a **siege mentality** in some Muslim communities. **Many are afraid to talk** to newcomers for fear of being entrapped by FBI informants. Some are afraid to express political views, and **others have stopped attending mosque** altogether.

Michael B. Farrell, "Fort Hood Shootings: US Muslims Feel New Heat," *Christian Science Monitor*, Nov. 17, 2009 (emphasis added). The media is replete with similar reports. *See* Paul Vitello and Kirk Semple, "Muslims Say FBI Tactics Sow Anger and Fear," *New York Times*, Dec. 18, 2009 ("[A] national coalition of Islamic organizations warned that it would cease cooperating with the FBI unless the agency stopped infiltrating mosques and using 'agents provocateurs to trap unsuspecting Muslim youth.'"); Nick Meyer, "US Attorney General Eric Holder Addresses Detroit Community," Arabs, Muslims," *New America Media*," Nov. 24, 2009 (commenting that recent events "have combined to increase tensions between law enforcement agencies like the FBI and both Arabs and Muslims over issues of discrimination and profiling."); Charlie Savage, "Loosening of FBI Rules Stirs Privacy Concerns," *New York Times*, Oct. 29, 2009 (FBI's Domestic Investigations and Operations Guidelines authorize agents to take into account ethnicity or religion, "specific and relevant ethnic behavior" and to "identify locations of

4

sf-2873324

1   concentrated ethnic communities" when determining whether to "open an 'assessment' to

2   'proactively' seek information about whether people or organizations are involved in national

3   security threats."); Alejandro J. Beutel, "Muslim Americans and U.S. Law Enforcement: Not

4   Enemies, But Vital Partners, *Christian Science Monitor*, Dec. 30, 2009; Editorial, "FBI Works

5   With Arab Community," *Detroit News*, Oct. 8, 2009; Teresa Watanabe and Paloma Esquivel,

6   "L.A. Area Muslims Say FBI Surveillance Has A Chilling Effect On Their Free Speech And

7   Religious Practices," *Los Angeles Times*, Mar. 1, 2009; Jacqueline L. Salmon, "Muslim

8   Americans At Odds Over FBI Contact," *Washington Post*, Mar. 28, 2009.  Along these lines,

9   Attorney General Eric Holder reportedly stated in an address to members of the Arab American

10  community in Detroit, "This is simply intolerable, and the tension that arises [between the

11  Muslim American community and the FBI] is unacceptable."  Nick Meyer, "US Attorney General

12  Eric Holder Addresses Detroit Community, Arabs, Muslims," *New American Media*, Nov. 24,

13  2009.

14       16.    The media has also reported on the FBI's practices of recruiting Muslim and Arab-

15  American children, as well as others, through the FBI's Junior Agent program.  Michelle Toy,

16  "FBI's Newest Recruits: Arabic-Speaking Kids," *NBC Bay Area*, Jan. 8, 2010; Candice Williams,

17  "Green Elementary Kids Train to Be FBI Junior Agents," *Detroit News*, Jan. 20, 2010.

18       17.    The information the plaintiffs seek is also relevant to the public's opportunity to

19  provide accurate analyses and comments to the FBI regarding the released Domestic Investigative

20  Operational Guidelines ("DIOG") and its implementation vis-à-vis Muslim communities.  The

21  General Counsel for the FBI, Ms. Valerie Caproni, wrote in a letter to Senate Select Committee

22  on Intelligence Chairman John D. Rockefeller IV, on December 15, 2008, that "we understand

23  that the expansion of techniques available . . . has raised privacy and civil liberties concerns [but]

24  we believe that our policies and procedures will mitigate those concerns."  Senate Report of the

25  Select Committee on Intelligence 34 (Mar. 9, 2009), *available at*

26  http://frwebgate.access.gpo.gov/cgi-

27  bin/getdoc.cgi?dbname=111_cong_reports&docid=f:sr006.111.pdf.  She stated that the FBI

28  would reassess the policy judgments made in the DIOG, and that the reassessment will be

5

1  "informed by our experience in the coming year, as well as by comments and suggest[ions]

2  received from Congress and interested parties."  The FBI's General Counsel reaffirmed this

3  intention in an interview posted on the FBI website by stating, "to the extent that the public has

4  comments and concerns, they should let us know because nothing is written in stone and we hope

5  we've gotten it right but if we haven't gotten it right, our goal is to make it right."  Federal

6  Bureau of Investigation, *The New Attorney General Guidelines*, PRESS ROOM: INSIDE THE FBI

7  PODCAST (Jan. 16, 2009), http://www.fbi.gov/inside/archive/inside011609.htm.  *See*

8  "Investigative Guidelines Cement FBI Role as Domestic Intelligence Agency, Raising New

9  Privacy Challenges," Center for Democracy & Technology, Oct. 29, 2008; Press Release,

10  American Civil Liberties Union, "ACLU Condemns New FBI Guidelines," Oct. 3, 2008;

11  American Civil Liberties Union, "Fact Sheet - New Attorney General Guidelines," Oct. 8, 2008,

12  http://www.aclu.org/print/national-security/fact-sheet-new-attorney-general-guidelines.

13      18.    Given the impact of the surveillance on national security and the exercise of core

14  civil liberties, it is imperative that the public gain a better understanding of the methods and scope

15  of the FBI's surveillance of Muslim communities in the United States.

16      19.    Expedited processing is appropriate for several reasons:  (a) to further the public's

17  interest in providing comments to the FBI in light of the FBI's General Counsel's December 2008

18  suggestion that any review and changes to the DIOG would be based on experience in

19  implementation "in the coming year"; (b) the wide-spread media attention focused on the subject

20  of the requests; and (c) the urgency to inform the public about government actions that potentially

21  intrude upon constitutional protections, including equal protection, privacy rights, freedom of

22  association, freedom of expression, and the free exercise of religion.

23  **B.    THE FBI HAS FAILED TO ADEQUATELY RESPOND TO THE**
    **PLAINTIFFS' FOIA REQUESTS**
24

25      20.    The FBI has failed to adequately respond to the plaintiffs' FOIA requests.

26      21.    On March 9, 2010, the plaintiffs under 5.U.S.C. § 552 and other applicable

27  regulations requested the disclosure of various FBI records pertaining to the surveillance of

28  Muslim Americans.  The plaintiffs' FOIA requests included exhibits of 40 media reports relating

6

to the FBI's surveillance of Muslim communities.  A copy of the plaintiffs' FOIA requests
(without exhibits) is appended hereto as Exhibit A and incorporated herein by reference.

22.     The plaintiffs requested FBI agency records regarding the FBI's policies and
practices regarding:

(a) the use of informants by the FBI;

(b) opening or carrying out "assessments;"

(c) materials setting forth the legal reasoning or authority relied
    upon by the FBI in conducting investigations and assessments;

(d) training for FBI agents regarding Islam, Muslim culture, and/or
    Muslim, Arab, South Asian, or Middle Eastern communities in
    the United States;

(e) the FBI's use of race, religion, ethnicity, language, or national
    origin for law enforcement purposes, including the contexts of
    geo-mapping and domain management;

(f) the FBI Citizenship Academy;

(g) the FBI Junior Agent Program; and

(h) domain management.

23.     The plaintiffs also requested records concerning FBI activities in Northern
California from January 2005 to the present regarding the following:  (a) investigations of
mosques, Islamic centers, Muslim community centers, members of mosques, Muslim leaders, and
imams; (b) the FBI Citizenship Academy and its alumni, and the FBI Junior Agent Program; and
(c) domain management and other records related to "community race and ethnicity" analyses or
assessments in the FBI domains of northern California.

24.     The plaintiffs further requested data regarding the targets and outcomes of law
enforcement activity in Northern California in relation to the rest of the country, including the
following types of information:  (i) FBI assessments and investigations of Islamic centers,
mosques, churches and synagogues; (ii) FBI assessments and investigations of religious leaders;
(iii) FBI contacts with imams; (iv) criminal prosecutions and immigration proceedings arising

7

1    from terrorism-related investigations and assessments with regard to the use of informants and

2    terrorism-related charges, and litigation results; and (v) the FBI's Special Citizenship Academy

3    and Junior Agent programs.

4        25.    The plaintiffs asked that their FOIA requests be processed on an expedited basis

5    because they pertain to information about which there is an "urgency to inform the public about

6    an actual or alleged federal government activity" and the FOIA requests were "made by [persons]

7    primarily engaged in disseminating information." See 5 U.S.C. § 552(a)(6)(E)(v)(II); 28 C.F.R.

8    §§ 16.5(d)(1)(iv) and (ii).  The FOIA statute provides for expedited processing of requests where

9    there is a compelling need.  5 U.S.C. § 552(a)(6)(E).  Under the statute, the urgency to inform the

10   public of actual or alleged federal government activity constitutes a "compelling need" where the

11   request is made by persons primarily engaged in disseminating information.  5 U.S.C.

12   § 552(a)(6)(E)(v)(II).

13       26.    Department of Justice regulations state that a FOIA request is entitled to expedited

14   processing when the information requested involves "[a] matter of widespread and exceptional

15   media interest in which there exist possible questions about the government's integrity which

16   affect public confidence."  28 C.F.R. § 16.5(d)(1)(iv).

17       27.    The FBI conceded that expedited processing is appropriate here.  In granting the

18   plaintiffs' request for expedition, the FBI agreed, by letter dated March 19, 2010, that the

19   plaintiffs had "provided sufficient information concerning the statutory requirements permitting

20   expedition" under federal regulations that provide for expedited processing of "matter[s] of

21   widespread and exceptional media interest in which there exist possible questions about the

22   government's integrity which affect public confidence."  28 C.F.R. § 16.5(d)(1)(iv).  A copy of

23   the FBI's March 19, 2010 letter is appended hereto as Exhibit B and incorporated herein by

24   reference.

25       28.    Also on March 19, 2010, the FBI issued a letter to the plaintiffs acknowledging

26   receipt of the plaintiffs' FOIA requests and assigning tracking number 1144839-000 to those

27   requests.  A copy of the FBI's March 19, 2010 letter is appended hereto as Exhibit C.  In this

28   letter, the FBI stated that it was searching its Central Records System for the information the

8

sf-2873324

1  plaintiffs requested and that the FBI would inform the plaintiffs of the results "as soon as

2  possible."

3      29.    Under 32 C.F.R. § 1700.12(b), a request that is granted expedited processing—

4  such as the plaintiffs' FOIA requests—"shall be given priority and shall be processed *as soon as*

5  *practicable*." 32 C.F.R. § 1700.12(b) (emphasis added); *see* 5 U.S.C. § 552(a)(6)(E)(iii).

6  Expedited processing entitles the requester to move immediately to the front of an agency

7  processing queue.  Under 5 U.S.C. § 552(a)(7)(B)(ii), the FBI is also required to provide "an

8  estimated date on which the agency will complete action on the request."

9      30.    On June 15, 2010—over three months after plaintiffs' FOIA requests—the FBI

10  wrote to inform the plaintiffs that it was searching for responsive documents.  A copy of the

11  FBI's June 15, 2010 letter is appended hereto as Exhibit D.  The FBI, however, has failed to

12  provide an estimated date on which it would complete action of the request and produce

13  responsive documents.

14      31.    Notwithstanding the FBI's grant of expedited processing, the FBI has exceeded the

15  generally applicable 20-day statutory deadline for processing standard, non-expedited FOIA

16  requests.

17      32.    As of the date of this filing, the FBI has neither made any of the requested records

18  available to the plaintiffs nor informed the plaintiffs of an anticipated date for the completion of

19  the processing of their requests.

20      33.    The plaintiffs have exhausted all applicable administrative remedies with respect

21  to their FOIA requests.

22      34.    The FBI has wrongfully withheld the requested records from the plaintiffs.

23  **FIRST CLAIM FOR RELIEF**

24  **Violation of FOIA for Wrongful Withholding of Agency Records**

25      35.    The plaintiffs repeat and reallege paragraphs 1-34.

26      36.    Pursuant to 5 U.S.C. § 552(a)(6)(E)(iii), the FBI has wrongfully withheld agency

27  records requested by the plaintiffs and have failed to comply with the statutory time limits for the

28  processing of the plaintiffs' FOIA requests.

37.     Pursuant to 5 U.S.C. § 552(a)(7)(B)(ii), the FBI has inadequately responded to the plaintiffs' expedited request for records by failing to provide an estimated date on which the agency will complete action on the request.

38.     The plaintiffs have exhausted the applicable administrative remedies with respect to FBI's wrongful withholding of the records requested in the plaintiffs' FOIA requests.

39.     The plaintiffs are entitled to injunctive relief with respect to the release and disclosure of the requested documents under 5 U.S.C. § 552(a)(4)(B) because the FBI continues to improperly withhold agency records in violation of FOIA.  The plaintiffs will suffer irreparable injury from, and have no adequate legal remedy for, the FBI's illegal withholding of government documents pertaining to the FBI's surveillance and investigation of Muslim communities in Northern California.

**REQUESTED RELIEF**

WHEREFORE, the plaintiffs pray that this Court:

A.  Declare that FBI's failure to disclose the records requested by the plaintiffs is unlawful;

B.  Order the FBI to process immediately the requested records in their entirety;

C.  Order the FBI to make the requested records in their entirety available to the plaintiffs;

D.  Provide for expeditious proceedings in this action;

E.  Enter a preliminary and permanent injunction against the FBI ordering the relief requested herein;

F.  Award to the plaintiffs their litigation costs and reasonable attorneys' fees incurred in this action; and

G.  Grant such other relief as the Court may deem just and proper.

Dated: August 24, 2010

SOMNATH RAJ CHATTERJEE
PATRICIA SVILIK
CHRISTIE L. YANG
MORRISON & FOERSTER LLP

By: _____
    SOMNATH RAJ CHATTERJEE

Attorneys for Plaintiffs
THE AMERICAN CIVIL LIBERTIES
UNION OF NORTHEN
CALIFORNIA, ASIAN LAW
CAUCUS, AND THE SAN
FRANCISCO BAY GUARDIAN

sf-2873324

11