1   SOMNATH RAJ CHATTERJEE (CA SBN 177019)   NASRINA BARGZIE (CA SBN 238917)
    SChatterjee@mofo.com                      nasrinab@advancingjustice-alc.org
2   ANGELA E. KLEINE (CA SBN 255643)          ASIAN AMERICANS ADVANCING
    AKleine@mofo.com                          JUSTICE
3   DEBRA URTEAGA (CA SBN 278744)             ASIAN LAW CAUCUS
    DUrteaga@mofo.com                         55 Columbus Avenue
4   MORRISON & FOERSTER LLP                   San Francisco, California 94111
    425 Market Street                         Telephone: 415.896.1701
5   San Francisco, California 94105           Facsimile: 415.896.1702
    Telephone: 415.268.7000
6   Facsimile: 415.268.7200

7   JULIA HARUMI MASS (CA SBN 189649)
    JMass@aclunc.org
8   AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF NORTHERN
9   CALIFORNIA, INC.
    39 Drumm Street
10  San Francisco, California 94111
    Telephone: 415.621.2493
11  Facsimile: 415.255.8437

12  Attorneys for Plaintiffs

13                      UNITED STATES DISTRICT COURT

14                     NORTHERN DISTRICT OF CALIFORNIA

15                        SAN FRANCISCO DIVISION

16  THE AMERICAN CIVIL LIBERTIES UNION          Case No.        3:10-cv-03759-RS
    OF NORTHERN CALIFORNIA, ASIAN LAW
17  CAUCUS, SAN FRANCISCO BAY
    GUARDIAN                                    **PLAINTIFFS' NOTICE OF MOTION
18                Plaintiffs,                    AND CROSS-MOTION FOR
                                                 SUMMARY JUDGMENT AND
19        v.                                     OPPOSITION TO DEFENDANT'S
                                                 MOTION FOR SUMMARY
20                                               JUDGMENT; MEMORANDUM OF
21  FEDERAL BUREAU OF INVESTIGATION,            POINTS AND AUTHORITIES**
    DEPARTMENT OF JUSTICE,
22                Defendants.                    Date:   TBD
                                                 Time:   TBD
23                                               Courtroom: 3
                                                 Hon. Richard Seeborg
24

25

26

27

28

1    **NOTICE OF MOTION AND MOTION FOR CROSS-SUMMARY JUDGMENT**

2    TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

3            TO DEFENDANT AND HIS ATTORNEYS OF RECORD:

4            PLEASE TAKE NOTICE that Plaintiffs the American Civil Liberties Union of Northern

5    California, the Asian Americans Advancing Justice - Asian Law Caucus, and the San Francisco

6    Bay Guardian (collectively, "Plaintiffs") will and hereby do oppose Defendant's motion for

7    summary judgment and move the Court for cross-summary judgment pursuant to Federal Rule of

8    Civil Procedure 56.

9            As set forth in the accompanying memorandum of points and authorities, Defendant has

10   failed to meet its burden of proving that the withheld information comes within an exemption to

11   the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), has not provided reasonably specific

12   descriptions of withheld documents, and has failed to provide reasonably segregable portions of

13   responsive records.  Accordingly, because Defendant has failed to meet its burden, there is no

14   genuine issue as to any material fact and Plaintiffs are entitled to judgment as a matter of law that

15   Defendant has violated the FOIA by continuing to improperly withhold non-exempt information.

16           This motion is based on this Notice of Motion and Motion; the accompanying

17   Memorandum of Points and Authorities; the accompanying Declaration of Debra Urteaga and the

18   exhibits attached thereto; the pleadings and papers on file herein; such other matters as may be

19   presented to the Court at the time of the hearing; and such other and further evidence and

20   arguments as the Court may properly consider.

21
22   Date: November 4, 2014                    By:  */s/ Somnath Raj Chatterjee*
                                                    Somnath Raj Chatterjee
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

I.  INTRODUCTION ....................................................................................................... 1

II.  FACTUAL STATEMENT ........................................................................................... 2

    A.  Suspicionless Surveillance Is Now a Key FBI Function. ................................... 2

    B.  Plaintiffs' 2010 FOIA Requests Seek Documents to Inform the Public............... 4

III.  THE FBI SHOULD PRODUCE DOCUMENTS WITHHELD UNDER EXEMPTION 7. ........................................................................................................ 6

    A.  The FBI Bears a Heavy Burden to Justify Withholding Responsive Information. .................................................................................................... 6

    B.  The FBI Fails to Establish a Law Enforcement Objective Under Exemption 7. .................................................................................................. 8

        1.  The FBI Must Establish a "Rational Nexus" Between Enforcement of Federal Law and the Document to Claim Exemption 7........................ 8

        2.  The FBI's Conclusory Statements Fail to Establish a Legitimate Law Enforcement Purpose or a Rational Nexus. ..................................... 9

            a.  Assessments / Domain Management ........................................... 10

            b.  Community Outreach .................................................................. 12

            c.  Gathering "Informants"............................................................... 13

            d.  Training Materials ...................................................................... 13

    C.  Particular Claimed Exemptions Fail for Additional Reasons ............................ 14

        1.  Exemption 7(A) – Pending Law Enforcement Proceedings ................... 14

        2.  Exemption 7(D) – Confidential Sources......................................... 15

            a.  Express Grant of Confidentiality ................................................ 15

            b.  Implied Assurance of Confidentiality .......................................... 17

        3.  Exemption 7(E) – Investigative Techniques and Procedures ................. 18

            a.  The FBI Improperly Withheld Documents Regarding Publicly-Known Law Enforcement Techniques. ........................ 19

            b.  Investigation "Target" Documents Are Improperly Withheld........................................................................................ 19

            c.  "Assessment" Documents Are Improperly Withheld. ................. 20

            d.  Information Regarding Recruiting Informants Is Improperly Withheld................................................................... 21

IV.  THE FBI HAS NOT PROVIDED REASONABLY SPECIFIC DESCRIPTIONS OF WITHHELD DOCUMENTS IDENTIFIED IN EXHIBIT 8. ................................... 22

V.  THE FBI FAILED TO PROVIDE "REASONABLY SEGREGABLE" PORTIONS OF RESPONSIVE RECORDS. ................................................................ 23

VI.  CONCLUSION ........................................................................................................ 24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*Abdelfattah v. U.S. Dep't of Homeland Security,*
5
    488 F.3d 178 (3rd Cir. 2007) .................................................................................................... 23

6

*ACLU v. FBI,*
    No. C 12-03728 SI, 2013 U.S. Dist. LEXIS 93079 (N.D. Cal. July 1, 2013) ................ *passim*
7

*ACLU v. Office of the Director of National Intelligence,*
8
    No. 10 Civ. 4419 (RJS), 2011 U.S. Dist. LEXIS 132503 (S.D.N.Y. Nov. 15, 2011) ........... 20

9

*Am. Civil Liberties Union of N. Cal.* (*"ACLU"*) *v. Federal Bureau of Investigation*
    (*"FBI"*),
10
    No. C 12-03728 SI, 2014 U.S. Dist. LEXIS 130501 (N.D. Cal. Sept. 16, 2014) ........... *passim*

11

*Akin v. Q-L Investments, Inc.,*
12
    959 F.2d 521 (5th Cir. 1992)................................................................................................... 16

13

*Billington v. U.S. DOJ,*
    233 F.3d 581 (D.C. Cir. 2000) ............................................................................................... 17
14

*Burge v. Eastburn,*
15
    934 F.2d 577 (5th Cir. 1991).................................................................................................... 7

16

*Campbell v. U.S. DOJ,*
17
    164 F.3d 20 (D.C. Cir. 1999) ..................................................................................... 8, 9, 16, 17

18

*Church of Scientology v. U.S. Dep't of Army,*
    611 F.2d 738 (9th Cir. 1980).............................................................................................. 8, 9
19

*Davin v. U.S. DOJ,*
20
    60 F.3d 1043 (3d. Cir. 1995)..................................................................................... 15, 22, 24

21

*Dep't of Air Force v. Rose,*
22
    425 U.S. 352 (1976) ................................................................................................................. 7

23

*Dobronski v. FCC,*
    17 F.3d 275 (9th Cir. 1994)...................................................................................................... 7
24

*Elec. Frontier Found. v. Dep't of Def.,*
25
    No. C 09-05640 SI, 2012 WL 4364532 (N.D. Cal. Sept. 24, 2012)...................................... 18

26

*EPA v. Mink,*
27
    410 U.S. 73 (1973).................................................................................................................. 22

28

*Feshbach v. SEC,*
    5 F. Supp. 2d 774 (N.D. Cal. 1997) ................................................................... 18

*Gordon v. FBI,*
    390 F. Supp. 2d 897 (N.D. Cal. 2004) ................................................................. 8

*Grant Cent. P'ship, Inc. v. Cuomo,*
    166 F.3d 473 (2nd Cir. 1999) .............................................................................. 14

*Judicial Watch, Inc. v. FDA,*
    449 F.3d 141 (D.C. Cir. 2006) ................................................................... 8, 22, 24

*King v. U.S. DOJ,*
    830 F.2d 210 (D.C. Cir. 1987) ............................................................................ 17

*Lamont v. U.S. DOJ,*
    475 F.Supp. 761 (S.D.N.Y. 1979) ...................................................................... 10

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) .............................................................................. 8

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) ......................................................................................... 7, 21

*Powell v. U.S. DOJ,*
    584 F. Supp. 1508 (N.D. Cal. 1984) ................................................................... 20

*Pub. Citizen Health Research Gro. V. FDA,*
    185 F.3d 898 (D.C. Cir. 1999) ............................................................................ 22

*Rosenfeld v. U.S. DOJ,*
    57 F.3d 803 (9th Cir. 1995) .................................................................. 9, 10, 18, 19

*U.S. Dep't of Justice ("DOJ") v. Reporters Comm. for Freedom of the Press,*
    489 U.S. 749 (1989) ............................................................................................. 7

*U.S. Dep't of Justice v. Landano,*
    508 U.S. 165 (1993) ..................................................................................... 15, 17

*Vaughn v. Rosen,*
    484 F.2d 820 (D.C. Cir. 1973) ..................................................................... passim

*Voinche v. FBI,*
    46 F. Supp. 2d 26 (D.D.C. 1999) ....................................................................... 17

*Wiener v. FBI,*
    943 F.2d 972 (9th Cir. 1991) ................................................................... 9, 10, 15

STATUTES

5 U.S.C.

§ 552 ............................................................................................................... 6
§ 552(a)(4)(B) ................................................................................................. 22
§ 552(b)(7) .............................................................................................. *passim*
§552(b)(9) ...................................................................................................... 23

Civil Obedience Act of 1968 ..................................................................... 10

Fed. R. Civ. Proc. 56(e) ............................................................................. 16

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3           This action concerns transparency regarding the FBI's surveillance activity of U.S.

4    citizens and residents within Muslim communities in Northern California.  By this action,

5    Plaintiffs, the American Civil Liberties Union of Northern California, the Asian Americans

6    Advancing Justice—Asian Law Caucus, and the San Francisco Bay Guardian[1] seek records under

7    the Freedom of Information Act ("FOIA") from the Federal Bureau of Investigation's ("FBI").

8    Plaintiffs filed their FOIA requests in early 2010 and filed this action in August 2010 after the

9    FBI failed to respond.  Over the last four years of litigation, the FBI has produced documents

10   under a schedule overseen by Magistrate Judge Beeler.  That process has revealed much to the

11   public.  Among other things, FBI documents show that it has operated under false assumptions

12   and cultural stereotypes of Muslim Americans and has applied those views to the surveillance of

13   individuals without any suspicion of criminal wrongdoing.  The Plaintiffs' efforts have led to

14   significant public discussion.  To that end, this action has served FOIA's purpose.  But the job is

15   incomplete because the FBI has improperly withheld numerous responsive documents and

16   portions of documents that should be produced under FOIA to inform the public discussion.

17          The parties have now filed cross-motions for summary judgment.  Plaintiffs request that

18   the Court grant the Plaintiffs' motion and deny the FBI's motion, and specifically ask the Court to

19   do three things.

20          *First*, the Court should compel the FBI to produce the specific documents or redacted

21   portions of documents identified in Exhibit 7 that the FBI has withheld by claiming FOIA

22   Exemption 7,[2] which protects only documents that the FBI gathered for "law enforcement

23   purposes."  As to these specific documents, the FBI has not and cannot meet its burden to

24   establish the threshold factual showing the Ninth Circuit requires to withhold these documents.

25

26          [1] The San Francisco Bay Guardian closed its publication on October 14, 2014.

27          [2] Plaintiffs do not waive challenges to documents withheld under Exemptions 2 and 5.

28

1  Indeed, the FBI's submissions show that these documents relate to functions that are distinct from

2  the enforcement of any particular law.

3       *Second*, the Court should compel a supplemental *Vaughn* index for documents identified

4  in Exhibit 8, which have been withheld under Exemptions 2, 5, and/or 7. For these documents,

5  the FBI has not met its burden of providing specific information sufficient to "allow the court to

6  understand the withheld information" and "address the merits" of the claimed exemptions, as the

7  law requires. Instead, the FBI supports its exemption claims with prolix but ultimately vague,

8  conclusory, and repetitive assertions that are insufficient as a matter of law. If the FBI cannot

9  satisfy its burden in a supplemental index, the documents should be produced.

10       *Third*, the Court should compel the FBI to produce segregable portions of withheld

11  documents that should be produced, even if portions of those documents may be withheld under

12  an appropriate exemption. These specific documents are identified in Exhibit 9.[3]

13  **II.    FACTUAL STATEMENT**

14       **A.    Suspicionless Surveillance Is Now a Key FBI Function.**

15       The FBI functions today not only as an agency to investigate and fight crime in the

16  traditional sense, but also to gather intelligence on U.S. citizens and residents, including

17  intelligence gathered without the reasonable suspicion of criminal activity.[4] As described by

---

18      [3] As discussed below, the FBI's *Vaughn* index reflects only a small sample of all of the

19  documents the FBI has withheld because of the parties' agreement to resolve any disputes on the basis of a sampled *Vaughn* index in order to reduce the burden on the FBI. Accordingly, the FBI

20  should be required to produce any documents that it did not index in its *Vaughn* submission but that it withheld or redacted based on the same grounds asserted in the documents listed in Exhibit

21  7, 8, and 9.

22      [4] *See* Barton Gellman, Cover Story: Is the FBI Up to the Job 10 Years After 9/11?, TIME, May 12, 2011; Derek Mead, Obama's Pick for FBI Director Says the FBI Is an

23  Intelligence Agency, Motherboard, July 9, 2013, available at http://motherboard.vice.com/blog/obamas-pick-for-fbi-director-says-the-fbi-is-an-intelligence-

24  agency (The "transition of the FBI from a crime-fighting entity to an intelligence-gathering counterterror agency is recent, and remains one of the most significant mission changes of any

25  government agency . . . ."); FBI website, http://www.fbi.gov/about-us/intelligence/intel-driven ("What is just around the corner that we should be preparing for now? . . . [T]he FBI combines its

26  investigations and intelligence operations to be more predictive and preventative—more aware of emerging threats and better able to stop them before they turn into crimes."); FBI website,

27  http://www.fbi.gov/about-us/intelligence/timeline (timeline of FBI shift); David Gomez, Column: How Robert Mueller transformed the FBI into a counterterrorism agency, Valley News For

28  Foreign Policy, June 9, 2013, *available at* http://www.vnews.com/opinion/6780499-95/column-

(Footnote continues on next page.)

former FBI Director Robert Mueller, the FBI has shifted its national security and counterterrorism efforts from crime fighting to intelligence gathering.[5]  The FBI has reallocated significant resources from focusing on investigating and prosecuting crimes, toward anticipating potential crimes.[6]

To gather intelligence without a criminal predicate, the FBI has developed new categories of investigatory activity.  **"Assessments,"** authorized under the FBI's Domestic Investigations and Operations Guide, "do not require a particular factual predication," and "cannot be arbitrary or groundless speculation," but require "less than 'information or allegation' as required for the initiation of a preliminary investigation.'"[7]  **"Domain assessments"** "may be opened to obtain information that informs or facilitates the FBI's intelligence analysis and planning functions." Such assessments are not "threat specific" and "no particular factual predication is required" for domain management assessments.  *See* DIOG, § 5.6.3.3.  The FBI has adopted **"community outreach"** as an intelligence-gathering tool, and indeed community concerns about the coercive nature of such "outreach" animated the instant FOIA request.  But to be clear, this community

---

(Footnote continued from previous page.)

how-robert-mueller-transformed-the-fbi-into-a-counterterrorism-agency ("The shift to an intelligence agency was dramatic and disheartening to those who had joined the bureau under former directors . . . to investigate gangs, organized crime and international cartels — and actually put people in jail. . . .").

[5]  *See* Garrett M. Graff, FBI Director Bob Mueller's "War on Terror" Comes to an End, Washingtonian, September 3, 2013.

[6]  *See* U.S. GAO, FBI Transformation, June 3, 2004 ("[T]he FBI has permanently realigned some of its field agent resources from traditional criminal investigative programs to work on counterterrorism and counterintelligence investigations – about 700 agents in all."); Garrett M. Graff, *FBI Director Bob Mueller's "War on Terror" Comes to an End.* ("As the Bureau refocused on terrorism, its criminal division atrophied.  Some 2,000 FBI agents were pulled out of drug investigations along the Mexican border[.] . . . During tours of field offices, agents will point out how whole office floors once devoted to violent crime may only occupy a few cubicles.").

[7]  *See* FBI Domestic Investigations and Operations Guide, October 2011 ("DIOG"), § 5.1, *available at* http://vault.fbi.gov/FBI%20Domestic%20Investigations%20and%20Operations%20Guide%20% 28DIOG%29/fbi-domestic-investigations-and-operations-guide-diog-2011-version/fbi-domestic-investigations-and-operations-guide-diog-october-15-2011-part-01-of-03/view.

---

1  outreach—which includes many "voluntary interviews" with community members whom FBI

2  may seek to recruit as informants—requires no criminal predicate.[8]  Again, the DIOG instructs:

3  "Some FBI activities are not traditional investigative or intelligence activities.  Activities such as

4  liaison, tripwires, and other community outreach represent relationship-building efforts or other

5  pre-cursors to developing and maintaining good partnerships."  DIOG § 5.1.3.

6       The FBI may also undertake assessments proactively with purposes such as obtaining

7  information on individuals, groups, or organizations of possible investigative interest, either

8  because they may be involved in criminal or national security-threatening activities or because

9  they may be targeted for attack or victimization in such activities, as well as to identify and assess

10  individuals who may have value as confidential human source.  DIOG §§ 5.1.3, 5.2.

11       As explained below, these types of intelligence-gathering and outreach activities are the

12  subject of many of the withheld and redacted documents that are the subject of this motion and

13  for which the Government asserts a "law enforcement" exemption.  Most, if not all, of these

14  activities are not intended to bring the subjects of "investigation" to a criminal court, and

15  therefore will never receive the judicial scrutiny afforded law enforcement actions.  Accordingly,

16  ensuring that that law enforcement exemption—which was intended for true criminal

17  investigatory activities—is not used to shroud these practices in secrecy is important.

18      **B.**     **Plaintiffs' 2010 FOIA Requests Seek Documents to Inform the Public.**

19       ***Plaintiffs' FOIA Requests.***  Partially in response to the FBI's suspicionless surveillance

20  activities, on March 9, 2010, Plaintiffs submitted a FOIA request seeking documents about the

21  following subjects:  FBI's "assessments" of local Muslim communities; training for FBI agents

22  regarding Muslim culture; use of "informants"; use of race, religion, ethnicity, language, or

23  national origin for law enforcement purposes; FBI activities in Northern California pertaining to

24  "domain management"; and certain  data about mosques, churches, synagogues, or Islamic

---

25       [8]  *See also* Sinnar, Shirin, "Questioning Law Enforcement," 77 Brook. L. Rev. 41 (Fall

26  2011) ("[S]cholars and officials have estimated that the FBI has conducted as many as two
hundred thousand or half a million interviews of Muslims in the United States" and that "[i]n the

27  first three years following the September 11 attacks, the FBI carried out at least four well-
publicized national rounds of interviews of Muslims and Arabs.").

28

centers in Northern California with open "assessments" or "investigations," and other related issues.  (Declaration of Debra Urteaga in Support of Plaintiffs' Cross Motion for Summary Judgment and Opposition ("Decl.") ¶ 2 & Ex. 1.)  On July 27, 2010, Plaintiffs submitted an additional FOIA request for the disclosure of certain FBI records pertaining to racial and ethnic "mapping" in Northern California and the number of communities from which the FBI has collected such information or mapped.  (*Id*. ¶ 3 & Ex. 2.)

**The FOIA Complaint and Subsequent Negotiations.**  On August 24, 2010, Plaintiffs filed this action seeking declaratory and injunctive relief.  (ECF No. 1.)  Over the next several months and with the assistance of Magistrate Judge Beeler, the parties ultimately agreed to a production schedule.  (*Id.* ¶ 4.)  On June 30, 2012, the FBI completed its production of documents, consisting of 20 interim releases of documents.  (*Id*.)  The FBI redacted approximately 55,036 pages of documents, and withheld in full approximately 47,794 more pages of documents.  (*Id*.)

**Significant Documents Discovered.**  The Plaintiffs' FOIA request proved fruitful.  Among other things, the FBI's documents disclosed FBI assumptions, stereotypes, and activities that raise significant concerns and that could benefit from public debate.[9]  For example, a presentation on Arab and Muslim culture compares the Western thought process with that of all Arabs—Westerners are "rational" thinkers, but Arabs are "emotion based."  The document, which is used to train FBI agents, further asserts that, while "Western cultural values" seek to "identify problems and solve them through logical decision-making," "Arab cultural values" are "facts colored by emotion and subjectivity."   Also, according to the document, "Westerners think, act, then feel," while "Arabs feel, act, then think," and Arabs have "no concept of privacy" or "constructive criticism."  (*Id*. ¶ 8 & Ex. 4.)

---

[9]  *See* Yael Chanoff and Natalie Orenstein, "The Feds are watching – badly," San Francisco Bay Guardian, June 26, 2012, *available at* http://www.sfbg.com/2012/06/26/feds-are-watching-badly (Decl. Ex. 4); Colin Moynihan, "In Bay Area, a Fragile Relationship Between Muslims and the F.B.I.," The New York Times, February 28, 2013, *available at* http://www.nytimes.com/2013/03/01/us/attack-on-mosque-ilustrates-relationship-between-fbi-and-muslims-in-bay-area.html?_r=1&. (*Id*. ¶ 7 & Ex. 3.)

1    More broadly, the documents reveal a pattern of surveillance of individuals who have

2    neither engaged in nor are suspected to have engaged in criminal activity, but who have been

3    targeted because of their race or religion.  For example, a domestic intelligence document being

4    provided to domain management coordinators, labeled as "Community Outreach Specialists,"

5    serves to "document the outreach activities conducted by the writer [redacted] within the San

6    Francisco Bay Area."  (*Id*. ¶ 9 & Ex. 5.)  Another document's purpose is to "document outreach

7    activities" to "PASFBA" which is a "community-oriented organization . . . ."  (*Id*. ¶ 10 & Ex. 6.)

8    Not a hint of criminal activity is noted in these documents.

9    ***The Parties Stipulated to a*** **Vaughn** ***Index Procedure.***  In connection with the FBI's

10   representation that its production was complete, the parties agreed upon a procedure for

11   producing a *Vaughn* index.  Under that procedure, the FBI was to produce a draft *Vaughn* index

12   identifying a sample of the documents the FBI withheld under each claimed FOIA exemption so

13   that Plaintiffs could assess the basis for any claimed exemption.  On March 5, 2014, the FBI

14   completed draft *Vaughn* indices identifying only a sample of the documents the FBI withheld

15   under a claimed FOIA exemption.  (*Id.* ¶ 5.)

16   ***Plaintiffs' Narrowed Disputes:***  After the production of a *Vaughn* index, the parties

17   narrowed the issues before summary judgment motions were filed.  The Plaintiffs agreed not to

18   challenge numerous FOIA exemptions, including Exemption 1, 3, 4, 6, 8, and 9.  (*Id.* ¶ 6.)  The

19   parties did not resolve, however, disputes regarding (a) numerous improperly redacted or

20   withheld documents and/or (b) the adequacy of the *Vaughn* index descriptions.  (*Id.*)

21   **III.    THE FBI SHOULD PRODUCE DOCUMENTS WITHHELD UNDER**
22   **EXEMPTION 7.**

23       **A.    The FBI Bears a Heavy Burden to Justify Withholding Responsive**
         **Information.**

24   "FOIA was enacted to facilitate public access to Government documents."  *Am. Civil*

25   *Liberties Union of N. Cal.* (*"ACLU"*) *v. Federal Bureau of Investigation* (*"FBI"*), No. C 12-

26   03728 SI, 2014 U.S. Dist. LEXIS 130501 (N.D. Cal. Sept. 16, 2014); *see also U.S.  Dep't of*

27   *Justice (*"*DOJ*"*) v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 (1989);

28   5 U.S.C. § 552.  Its purpose is "to ensure an informed citizenry, vital to the functioning of a

1   democratic society, needed to check against corruption and to hold the governors accountable to

2   the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also Dep't of*

3   *Air Force v. Rose*, 425 U.S. 352, 361-62 (1976); *Burge v. Eastburn*, 934 F.2d 577, 580 (5th Cir.

4   1991).  "Consistent with this purpose, there is a strong presumption in favor of disclosure."

5   *ACLU*, 2014 U.S. Dist. LEXIS 130501, at *6 (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164

6   (1991)).  FOIA contains a number of exemptions, but "these exemptions 'must be narrowly

7   construed.'"  *Id.* (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 154 (1989)).

8          Where a FOIA requester contends that the agency has not fully disclosed all responsive,

9   non-exempt materials, "summary judgment is a proper avenue for resolving [that] claim."

10   *ACLU v. FBI*, No. C 12-03728 SI, 2013 U.S. Dist. LEXIS 93079, at *6 (N.D. Cal. July 1, 2013)

11   (citing *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 114 (9th Cir. 1988)).  At summary

12   judgment, the government agency withholding documents bears the burden of "proving that a

13   particular document [or redaction] falls within" one of the applicable exemptions to the disclosure

14   requirement.  *Id.*; *see also Dobronski v. FCC*, 17 F.3d 275, 277 (9th Cir. 1994).  More

15   specifically, in order to justify its withholding of any documents subject to a FOIA request, the

16   defendant agency is required to submit affidavits or declarations and/or "a Vaughn index so that a

17   district judge could 'examine and rule on each element of the itemized list.'"  *Vaughn v. Rosen*,

18   484 F.2d 820, 827 (D.C. Cir. 1973).

19          The *Vaughn* index and/or accompanying affidavits or declarations must "provide[] a

20   relatively detailed justification, specifically identif[y] the reasons why a particular exemption is

21   relevant and correlat[e] those claims with the particular part of a withheld document to which

22   they apply."  *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) (internal quotations

23   omitted).  These materials "must contain reasonably detailed descriptions of the documents and

24   allege facts sufficient to establish an exemption," and must not "rely upon conclusory and

25   generalized allegations of exemptions."  *ACLU*, 2014 U.S. Dist. LEXIS 130501, at *6-7 (citing

26   *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995); *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987)).

27          An agency also has the burden of detailing what portion of a document is non-exempt and

28   how that material is dispersed throughout the document.  *ACLU*, 2014 U.S. Dist. LEXIS 130501,

at *7; *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).  Any non-exempt information that is reasonably segregable must be disclosed.  *Id.*

### B.   The FBI Fails to Establish a Law Enforcement Objective Under Exemption 7.

The Court should compel the FBI to produce the whole documents and redacted information wrongfully withheld under Exemption 7 described in Exhibit 7.  (Decl. ¶ 11 & Ex. 7.) Exemption 7 permits the government to withhold "records or information compiled for law enforcement purposes" under certain enumerated conditions.  5 U.S.C. § 552(b)(7).  The FBI has failed to establish that these documents were compiled pursuant to a legitimate law enforcement purpose.

### 1.   The FBI Must Establish a "Rational Nexus" Between Enforcement of Federal Law and the Document to Claim Exemption 7.

Before invoking an exemption under any enumerated subsection of Exemption 7, the FBI must meet the threshold requirement of "establish[ing] a 'rational nexus' between enforcement of a federal law and the document for which an exemption is claimed."  *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 748 (9th Cir. 1980); *see also ACLU*, 2014 U.S. Dist. LEXIS 130501, at *12-18.  "The rational nexus test requires courts to accord a degree of deference to a law enforcement agency's decisions to investigate."  *ACLU*, 2014 U.S. Dist. LEXIS 130501, at *12; *Campbell v. U.S. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1999).  The "court's 'deferential' standard of review is not, however, 'vacuous.'"  *Id.*  "The burden is on the government to show that the information . . . was received for a law enforcement purpose; the burden is not on the plaintiffs to show that it was not."  *Gordon v. FBI*, 390 F. Supp. 2d 897, 901 (N.D. Cal. 2004).

In order to determine whether a rational nexus exists, the FBI must do the following:

1.   Show that the withheld documents were compiled "for law enforcement purposes." 5 U.S.C. § 552(b)(7).

2.   Demonstrate the connection (rational nexus) "between enforcement of a federal law and the document for which an exemption is claimed."  *Church of Scientology*, 611 F.2d at 748; *Rosenfeld v. U.S. DOJ*, 57 F.3d 803, 808 (9th Cir. 1995).

3.   Describe with specificity the alleged federal law violation.  *Id; ACLU*, 2014 U.S. Dist. LEXIS 130501, at *7.

1  Specificity is necessary to ensure that the records were compiled pursuant to a law enforcement

2  objective "within the authority" of the agency. *Church of Scientology*, 611 F.2d at 748

3  (insufficient evidence to warrant finding that agency "had a law enforcement purpose based upon

4  properly delegated enforcement authority"). As such, cited statutes must not be "very broad" or

5  "prohibit a wide variety of conduct" because mere "[c]itations to these statutes do little to inform

6  [plaintiff] of the claimed law enforcement purpose underlying the investigation." *Wiener v. FBI*,

7  943 F.2d 972, 986 (9th Cir. 1991) (holding that the FBI's failure to "provid[e] . . . details of the

8  kinds of criminal activity of which John Lennon was allegedly suspected" prevented the requester

9  from effectively challenging the applicability of the exemption).

10
11
       **2.**      **The FBI's Conclusory Statements Fail to Establish a Legitimate Law Enforcement Purpose or a Rational Nexus.**

12        For the documents listed in Exhibit 7, the FBI fails to establish either a "law enforcement

13  purpose" or a "rational nexus." In the FBI's declaration, the FBI merely notes that the documents

14  withheld are those that "summarize FBI criminal investigations and intelligence gathering efforts

15  . . . to further the FBI's investigative efforts or intelligence mission of predicting and/or

16  preventing threats." (ECF No. 114, Hardy Dec. ¶ 72.) The FBI further describes the documents

17  as "compiled for the purpose of enhancing the FBI's ability to perform its law enforcement,

18  national security, and intelligence missions." *Id*. This explanation fails as a matter of law to

19  satisfy the FBI's burden to withhold responsive materials under FOIA Exemption 7. An asserted

20  investigatory or "intelligence gathering" power is not enough—the government must cite the

21  specific law it is enforcing and the specific criminal activity suspected. *Church of Scientology*,

22  611 F.2d 738 at 809 (remanding because agency failed to show that investigation involved

23  enforcement of statute). Clarity as to the agency's basis for its actions is essential to ensure that

24  the FBI is not overreaching and engaged in the illegitimate purpose of "generalized monitoring

25  and information-gathering" about First Amendment activity. *Rosenfeld*, 57 F.3d at 809; *see also*

26  DIOG §4.2 ("investigative activity may not be based solely on the exercise of rights guaranteed

27  by the First Amendment" or national origin, ethnicity, or religion).

28

For example, in *Rosenfeld*, the Ninth Circuit affirmed the district court's conclusion that the FBI lacked a legitimate law enforcement objective where the documents "strongly support the suspicion that the FBI was investigating [former UC President Clark] Kerr . . . because FBI officials disagreed with his politics" and were simply engaged in "generalized monitoring and information gathering." *Id.* Similarly, in *Wiener*, the Ninth Circuit held that the FBI's assertion that John Lennon was under investigation for possibility of violations of the Civil Obedience Act of 1968 and the Anti-Riot Act because of his association with a radical group was insufficient. 943 F.2d at 986. As the court explained, "[w]ithout providing" "further details of the kinds of criminal activity of which John Lennon was allegedly suspected," the requester "cannot effectively argue that the claimed law enforcement purpose was in fact a pretext." *Id.*[10]

Following *Wiener* and *Rosenfeld*, in *ACLU*, 2014 U.S. Dist. LEXIS 130501, at *17-18, Judge Illston recently held that a similar declaration submitted by the FBI failed (in two rounds of briefing) to establish a "legitimate law enforcement purpose" connected with the FBI's monitoring of the Occupy Movement. In that action, the same FBI declarant as in this case asserted the more specific "investigation of domestic terrorism" as a legitimate law enforcement purpose, but failed to "provide the particular criminal activity of which the protesters were allegedly suspected." *Id.* at 19. The court explained that "generalized monitoring and information-gathering," like the FBI is doing here, "is insufficient to satisfy Exemption 7's threshold requirement." *Id.* at 12 (citing *Rosenfeld*, 57 F.3d at 809). As in these decisions, the FBI's claims here under Exemption 7 must be rejected. To aid the Court's review, Plaintiffs have identified four specific types of documents improperly withheld on the basis of Exemption 7, and discuss them in detail as follows.

### a.    Assessments / Domain Management

The FBI has withheld many documents related to "assessments" and its "domain management" program. As discussed above, assessments are a new type of government

---

[10] *See also Lamont v. U.S. DOJ*, 475 F.Supp. 761, 775 (S.D.N.Y. 1979) (noting that "information collected" about suspected Communist Party member consisted of "generalized monitoring and information-gathering that are not related to [agency's] law enforcement duties").

monitoring, permitted for the first time by sweeping changes to new DOJ guidelines issued in 2008, at the tail end of the Bush administration. *See* DIOG § 5. Under its new "assessment" authority, FBI agents can investigate anyone they choose, so long as they claim they are acting to prevent crime, protect national security, or collect foreign intelligence, with no requirement of *any factual connection* between their law enforcement purpose and the conduct of the individual being investigated. *Id.* The "Domain Management" program is racial mapping that involves local FBI offices tracking groups in their "domains" based on race and ethnicity. *Id.* § 15.6.1.1. In this regard, the FBI directs its special agents in charge at its field offices not just to enforce the law and protect national security in their territories, but to "know your domain," by which the FBI means, "understanding every inch of a given community – its geography, its populations, its economies and its vulnerabilities."[11]

The documents related to "assessments" and "domain management" cannot be withheld under Exemption 7 given the Ninth Circuit's requirements to establish a "rational nexus" with "law enforcement purposes." For example, in its *Vaughn* index, the FBI describes Document 386 as an "interview simulation designed to cover cultural and religious history as it relates to the country/group and provide intelligence information needed for a basic understanding of the country/group on which the FBI has placed its investigative focus." (Decl. ¶ 20 & Ex. 10 (Index for Doc. 386).) The FBI claims that this document is exempt under Exemption 7 because "the FBI has protected the specific references to certain cultural identifiers particular to targets of counterterrorism and counterintelligence efforts," and "the cultural and religious references would single out the targets and their exact locations." (*Id.*)

There is, however, no connection provided between "cultural identifiers" and an actual "law enforcement purpose," much less any specific criminal law being enforced, as is required. Indeed, it is difficult to explain how targeting individuals based on "cultural identifiers" is anything but racial profiling or why this document should be withheld at all. One document

---

[11] *See* Robert S. Mueller, III, Speech to the International Association of Chiefs of Police (Nov. 10, 2008), at http://www.fbi.gov/news/speeches/using-intelligence-to-protect-our-communities; *see also supra* § II.A.

1    redacts almost an entire PowerPoint regarding a particular group's "population density," but the

2    FBI again fails to explain how such information is tied to any specific criminal activity being

3    investigated.  (*Id.* ¶ 12 & Ex. 7-1.)

4        Similarly, in withholding information regarding its "targets," the FBI's narrative repeats

5    the following phrase:  "[T]he FBI has protected targets of its counterterrorism efforts.  The FBI

6    investigates particular individuals/groups based on the *likelihood* that these certain

7    individuals/groups have *or will commit* terrorist acts against the United States." (*See, e.g., id.*

8    ¶ 20 & Ex. 10 (emphasis added).)  But unless these targets are being investigated pursuant to a

9    specific criminal activity under a specific federal statute, withholding such information is

10   improper.  *See ACLU*, No. 2014 U.S. Dist. LEXIS 130501, at *18.  Indeed, the FBI has it

11   backwards.  Innocent targets of the FBI's suspicionless surveillance—who are targets based only

12   on the FBI's view that they are members of a group that "will" "likely" commit a crime in the

13   future—have the right to know about it.  The FBI has not attempted to assert that such targets are

14   being investigated for particular criminal violations.  *See id.*

15                              **b.    Community Outreach**

16       The FBI has withheld information regarding its "community outreach" efforts.  The FBI,

17   however, has failed to show how contacts with the community relate to law enforcement

18   purposes.  For instance, the FBI's reasoning for withholding Documents 137 to 159 is "to protect

19   methods which the FBI utilizes to establish better relationships between its community partners

20   for detection and prevention of crime within its domains."  (*See* Decl. ¶ 20 & Ex. 10 (Index for

21   Docs. 137 to 159).)  As noted above, however, the FBI does not have a right to withhold

22   information based on non-criminal relationship-building activities.  The FBI's apparent "law

23   enforcement" connection is that by building better relationships with communities, the FBI may

24   learn of information relevant to prevent crime.  *See* DIOG § 5.1.3.  But Exemption 7 requires a

25   specific and present criminal law enforcement purpose—it does not permit the FBI to shield any

26   information it has about its contact with U.S. residents without reference to a violation of federal

27   law.  The community outreach documents should be produced.

28

### c. Gathering "Informants"

The FBI has withheld documents relating to its efforts to gather informants or "confidential human sources." But again, no rational nexus exists between these documents and a sufficient law enforcement purpose. For example, the FBI purports to withhold interview methods in Document 9 because revealing such information "potentially exposes CHSs [confidential human sources] to embarrassment within their communities and possible retaliation from those on whom they are providing information." (Decl. ¶ 20 & Ex. 10 (Index for Doc. 9).) Redacted is material that, according to the FBI, includes "examples of how [special agents] navigate immigration laws when conducting investigations." (*Id*.)

The FBI, however, did not and cannot show a criminal predicate regarding these basic tools to recruit potential, future informants. Information noted on Document 9 shows that FBI agents are instructed on how to exploit "immigration vulnerabilities," specifically as it "pertain[s] to immigration proceedings and how they tie in with the FBI's law enforcement mission." (*Id*. ¶ 13 & Ex. 7-2.) Similarly, information in Document 382 advises, "Give a mouse a cookie and he'll ask for a glass of milk," apparently referring to techniques to trick community members into participating in interviews. (*Id*. ¶ 14 & Ex. 7-3.) This "technique" is not about stopping criminals from breaking laws but about subverting power in aid of a surveillance mission. Plaintiffs do not seek the identities of informants in ongoing criminal proceedings or investigations, but the public—and in particular the "informants" and "targets" of recruiting techniques—have a strong interest in learning about the FBI's recruitment practices.

For instance, according to the FBI, one document "provides FBI personnel an instructional foundation on understanding, interviewing and recruiting Islamists." (*Id*. & Ex. 10 (Index for Doc. 14).) The FBI asserts that disclosing the redacted information in this presentation would make it easier for "Islamist criminals" to "circumvent the law," but the materials do not relate to any particular terrorist or investigation of any criminal activity. (*Id*.)

### d. Training Materials

The FBI identified responsive documents used to train agents that rely on biases and stereotypes of Arab and Muslim history and culture. (*See id*. ¶ 8 & Ex. 4.) While the FBI has

produced some such materials, albeit in redacted form, most have been withheld. Once again, the FBI provides no genuine law enforcement nexus. For instance, Document 28, which even has its main title redacted, includes a page called "A look at Arabic/Middle Eastern Cultures." Most of the rest of the text is redacted because it would reveal "cultural factors which FBI Special Agents must be cognizant of." (*Id.* ¶ 15 & Ex. 7-4.) But what law enforcement is being taught here? To what actual, open criminal law enforcement does training on Middle Eastern history and psychology relate? The FBI has failed to show the required criminal nexus with such trainings.

### C.   Particular Claimed Exemptions Fail for Additional Reasons

In addition to the threshold Exemption 7 requirements described above, the FBI has failed to show how particular claimed subsection of Exemption 7—Exemptions 7(A), 7(D), and 7(E)— apply to withheld documents identified in Exhibit 7. These failures provide additional grounds to require the production of these specific documents.

#### 1.   Exemption 7(A) – Pending Law Enforcement Proceedings

Exemption 7(A) provides that "records or information compiled for law enforcement purposes" may be withheld only if they "could reasonably be expected to ***interfere with enforcement proceedings***." 5 U.S.C. § 552(b)(7) (emphasis added). The government must "explain 'how releasing each of the withheld documents would interfere with the government's ***ongoing criminal investigation***.'" *ACLU*, 2014 U.S. Dist. LEXIS 130501, at *20-21 (emphasis added) (quoting *Lion Raisins Inc. v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1084 (9th Cir. 2004)). Reliance on "conclusory and generalized allegations of exemptions" is insufficient—the agency must show how withheld information would jeopardize an ongoing criminal investigation. *See Grant Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 485 n.5 (2nd Cir. 1999).

Here, as to many of the documents withheld under Exemption 7(A) (detailed in Exhibit 7), the FBI makes only conclusory assertions that the documents would "interfere with ongoing investigations." The FBI's declarant states only that he confirmed with FBI personnel that the information was "associated with pending law enforcement *or* intelligence gathering matters." (Hardy Dec. ¶ 74 (emphasis added).) That is insufficient. As Judge Illston explained in denying the FBI's motion for summary judgment in another case based on a similar Hardy declaration,

"the FBI is relying upon 'conclusory and generalized allegations of exemptions' when it states only that the information 'could reasonably be expected' to interfere with pending enforcement proceedings without explaining how or why.  The Court cannot make an assessment of the FBI's claim without any basis other than the FBI's bald assertion." *ACLU v. FBI*, 2013 U.S. Dist. LEXIS 93079, at *22.  The same conclusion applies here.

Moreover, to the extent the documents withheld do not actually relate to any "pending law enforcement matters"—which the FBI acknowledges by adding the vague phrase "or intelligence gathering matters"—Exemption 7(A) cannot apply as a matter of law.

### 2.        Exemption 7(D) – Confidential Sources

The FBI has failed to satisfy Exemption 7(D) for the documents identified in Exhibit 7.  Exemption 7(D) protects documents from disclosure if they "could reasonably be expected to disclose the identity of a confidential source."  5 U.S.C. § 552(b)(7).  In *United States Department of Justice v. Landano*, 508 U.S. 165 (1993), the Supreme Court rejected "a presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information to the FBI."  *Id*. at 181.  The exemption applies only if "the particular *source* spoke with an understanding that the communication would remain confidential."  *Id*. at 172. (emphasis in original).  It is the government's burden to "make an individualized showing of confidentiality with respect to each source."  *Id*. at 174.  The FBI "must provide the court and the FOIA requester with information sufficient to determine whether the source was truly a confidential one and why disclosure of the withheld information would lead to exposure of the source."  *Wiener*, 943 F.2d at 980.  In other words, "[t]o meet its burden, the government must 'make an ***individualized showing of confidentiality with respect to each source'***; confidentiality cannot be presumed."  *ACLU*, 2014 U.S. Dist. LEXIS 130501, at *30 (emphasis added).  Here, for documents withheld under Exemption 7(D), the FBI fails meet its burden of establishing that the withheld information would reveal a confidential source.

### a.        Express Grant of Confidentiality

For various documents, the FBI claims to have withheld documents under an express grant of confidentiality.  When an agency withholds information under Exemption 7(D) based on

an express grant of confidentiality, the agency must present probative evidence that the source did in fact receive an express grant.  *Davin v. U.S. DOJ*, 60 F.3d 1043, 1061-62 (3d. Cir. 1995) (holding government's declaration was insufficient to establish express grant); *Campbell*, 164 F.3d at 34.  Such evidence may include notations on the face of the document, "the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing policies for dealing with the source or similarly situated sources." *Campbell*, 164 F.3d at 34.

The FBI provides no probative evidence of an express grant of confidentiality.  The FBI relies solely on a declaration that baldly asserts that "there existed evidence of an agreement with [informants] that the FBI would not disclose their identities or the information they provided." (Hardy Dec. ¶ 77).  Moreover, several documents are described as redacted to protect information provided by a confidential source and supplied under an express promise of confidentiality.  (*See* Decl. ¶ 20 & Ex. 10 (Index of Docs. 164 to 166.)

These statements are insufficient to support the FBI's summary judgment motion.  First, the declarant lacks personal knowledge of the alleged confidentiality grant, and his testimony regarding the alleged grant should therefore be disregarded.  Fed. R. Civ. Proc. 56(e); *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 530 (5th Cir. 1992); *ACLU*, 2013 U.S. Dist. LEXIS 93079, at *25.  In *Campbell*, the D.C. Circuit considered an FBI declaration, which "assert[ed] that various sources received express assurances of confidentiality without providing any basis for the declarant's knowledge of this alleged fact."  *Campbell*, 164 F.3d at 34-35.  The *Campbell* court held that because the declarant "presumably lacks personal knowledge of the particular events that occurred more than 30 years ago, more information is needed before the court can conclude that exemption 7(D) applies."  *Id.* at 35.

Similarly, here, the declarant fails to assert personal knowledge of the alleged confidentiality agreement, and his declaration does not provide any basis for concluding that he has such knowledge.  To the contrary, the declarant, an attorney in Washington, D.C., likely lacks personal knowledge of a grant of confidentiality allegedly made over 10 years ago in California. His statements regarding the alleged confidentiality agreement are, therefore, insufficient to

1    support the government's motion.  *See ACLU*, 2013 U.S. Dist. LEXIS 93079, at *28 ("While it

2    may 'evident' [to Hardy] that the sources were expressly assured confidentiality, it is not evident

3    to the Court or to plaintiffs."); *see also Voinche v. FBI*, 46 F. Supp. 2d 26, 34 (D.D.C. 1999)

4    (holding that a declaration, in which the government offered the unsupported assertion that the

5    informant "received an 'expressed promise of confidentiality'" was insufficient, noting that "[t]o

6    properly invoke Exemption 7(D) . . . the FBI must present more than the conclusory statement of

7    an agent that is not familiar with the informant"); *King v. U.S. DOJ,* 830 F.2d 210, 219 (D.C. Cir.

8    1987) ("To accept an inadequately supported exemption claim 'would constitute an abandonment

9    of the trial court's obligation under the FOIA to conduct a *de novo* review.'").

10        Second, the FBI declarant's conclusory statements concerning the alleged express grant of

11    confidentiality lack the requisite specificity to support summary judgment.  The mere assertion

12    that an express assurance of confidentiality was given falls short of the particularized justification

13    required to support the exemption.  *Billington v. U.S. DOJ*, 233 F.3d 581, 584 (D.C. Cir. 2000).

14    Such a bald assertion merely recites the statutory standard and, therefore, is insufficient.  *Id.*; *see*

15    *also Campbell*, 164 F.3d at 30 ("affidavits will not suffice if the agency's claims are conclusory,

16    merely reciting statutory standards, or if they are too vague or sweeping").

17                      **b.      Implied Assurance of Confidentiality**

18        The FBI also claims some sources spoke under an *implied* assurance of confidentiality,

19    offering purely generic concerns about harms from disclosure in any case.  (*See* Decl. ¶ 20 & Ex.

20    10 (Index for Doc. 164 to 166).)  As noted in the FBI's declaration, "other individuals are

21    interviewed under circumstances from which an assurance of confidentiality can reasonably be

22    inferred."  (Hardy Dec. ¶ 76.)  It further suggests, without any reasonable explanation, that

23    releasing these documents would expose these supposed informants to threats and

24    embarrassment.  (*Id.* ¶ 78.)  The FBI fails to describe any specific circumstances that would

25    support an inference of confidentiality, such as "the character of the crime at issue" or "the

26    source's relation to the crime."  *Landano*, 508 U.S. at 179.  Indeed, it appears that there is no

27    "crime at issue" here, and there is no information provided to show that the "implied" informants

28    even considered themselves as such.

1    To allow the FBI to withhold information based on such boilerplate declarations would

2    amount to an "infer[ence] that all FBI criminal investigative sources are confidential," an

3    inference the Supreme Court found "unreasonable." *Id.*  Indeed, courts have flatly rejected nearly

4    identical declarations. *See, e.g.*, *ACLU*, 2013 U.S. Dist. LEXIS 93079, at *25; *ACLU*, 2014 U.S.

5    Dist. LEXIS 130501, at *33 (holding that more detailed Hardy declaration claiming "inferred"

6    confidentiality agreements relating to "organized violent groups" failed because they did not

7    "explain what types of criminals they were, whether they are violent, or whether they would

8    retaliate against in individual for disclosing information to law enforcement").[12]

9    ### 3.    Exemption 7(E) – Investigative Techniques and Procedures

10   The FBI has failed to satisfy Exemption 7(E) for the documents identified in Exhibit 7.

11   The FBI asserts Exemption 7(E) for three types of information: (1) training materials, (2) domain

12   management and assessments, and (3) policy documents.  Exemption 7(E) protects information

13   that "would disclose techniques and procedures for law enforcement investigations or

14   prosecutions" or "would disclose guidelines for law enforcement investigations or prosecutions"

15   if either disclosure could reasonably be expected to risk circumvention of the law.  5 U.S.C.

16   § 552(b)(7) (emphasis added); *Elec. Frontier Found. v. Dep't of Def.*, No. C 09-05640 SI, 2012

17   WL 4364532, at *3 (N.D. Cal. Sept. 24, 2012).  The exemption "requires that the agency

18   demonstrate logically how the release of the requested information might create a ***risk of***

19   ***circumvention of the law***," *ACLU*, 2014 U.S. Dist. LEXIS 130501, at *35 (emphasis added),

20   supported by specific, "non-conclusory" facts.  *Feshbach v. SEC*, 5 F. Supp. 2d 774, 787 (N.D.

21   Cal. 1997).  The FBI must show that the law enforcement rules they seek to withhold are not well

22   known to the public.  *See Rosenfeld*, 57 F.3d at 815.  As discussed below, the FBI's justifications

23   for withholding the documents listed in Exhibit 7 are insufficient, because, among other reasons,

24

25

26    [12]  Scrutinizing the FBI's general claims of an inferred confidentiality agreement is important in light of the FBI's documented history of targeting individuals for purportedly

27   voluntary interviews about themselves and their communities on the basis of race, ethnicity, and religion. *See* Sinnar, 77 Brook. L. Rev. 41.

28

1    many of the documents relate to techniques known to the public and documents regarding targets,

2    assessments, and informants do not show a risk of circumvention of the law.

3                        a.        **The FBI Improperly Withheld Documents Regarding Publicly-**
                                   **Known Law Enforcement Techniques.**
4

5             In several instances, the FBI attempts to justify withheld information regarding techniques

6    that are admittedly known to the public, but for which "the circumstances of its usefulness" are

7    not publicly known.  (*See* Decl. ¶ 20 & Ex. 10 (Index for Doc. 28).)  The FBI declaration

8    describes such information as "non-public details about techniques and procedures that are

9    otherwise known to the public."  (Hardy Dec. ¶ 80.)  The FBI's conclusory assertion is not

10   adequate.  In *Rosenfeld*, the Ninth Circuit rejected a similar argument.  There, the FBI argued that

11   it had a right to withhold a pretext phone call because, although it was a technique generally

12   known to the public, the technique at issue is more precise because of the use of the identity of a

13   particular individual.  57 F.3d at 815.  The court, however, rejected the argument and affirmed the

14   district court's judgment, holding that "If we were to follow such reasoning, the government

15   could withhold information under Exemption 7(E) under any circumstances, no matter how

16   obvious the investigative practice at issue, simply by saying that the 'investigative technique' at

17   issue is not the practice but the application of the practice to the particular facts underlying that

18   FOIA request."  *Id*.  Following this reasoning, Judge Illston repeatedly rejected similar

19   declarations by the FBI declarant here, in *ACLU*, 2013 U.S. Dist. LEXIS 93079, at *38-39; 2014

20   U.S. Dist. LEXIS 130501, at *29-30.

21            Here, as in *Rosenfeld* and the ACLU's Occupy FBI FOIA case, the FBI's bald assertion

22   that the public is unaware of the circumstances of a technique's usefulness is not enough to

23   sustain a withholding under Exemption 7(E) and should be rejected.

24                        b.        **Investigation "Target" Documents Are Improperly Withheld.**

25            The FBI also redacted several documents containing information regarding purported

26   targets of its investigation under Exemption 7(E).  For instance, the FBI describes the redacted

27   information in Document 165 as "information includ[ing] the date range of investigative

28   activities, depth of information gathered on the targets, and the goals and strategies of the

1   investigation."  (Decl. ¶ 20 & Ex. 10 (Index for Doc. 164 to 166).)  According to the FBI, if such

2   information were to be disclosed, it "would weaken FBI investigative strategies and make it

3   easier for criminals to circumvent the law."  (*Id.*)

4        Such generic language is not enough for plaintiffs to determine whether the exemption is

5   properly applied.  In *ACLU v. Office of the Director of National Intelligence*, No. 10 Civ. 4419

6   (RJS), 2011 U.S. Dist. LEXIS 132503, at *34-35 (S.D.N.Y. Nov. 15, 2011), for instance, the FBI

7   submitted a declaration identifying the types of records withheld regarding the surveillance of

8   government targets, but the reasoning for withholding the records were inadequate.  According to

9   the FBI, disclosure "could enable targets . . . to avoid detection or develop countermeasures to

10  circumvent" law enforcement efforts.  The court found such boilerplate insufficient to carry the

11  FBI's burden under Exemption 7(E).[13] The same conclusion applies here.

### c.      "Assessment" Documents Are Improperly Withheld.

13       The FBI further redacted significant information regarding assessments, domain

14  management, community outreach, and geospatial surveillance under Exemption 7(E).  The FBI,

15  however, provides only conclusory justifications for their redactions.  For instance, Document

16  160 is described as "tools used in Domain Management for the purpose of mapping intelligence

17  and investigatory information within a domain."  (Decl. ¶ 20 & Ex. 10 (Index for Doc. 160).)

18       It is unclear, however, how disclosing information regarding mapping could circumvent

19  the law.  The FBI, without much more, simply states that disclosure of assessment documents

20  (including domain management, mapping, and community outreach documents) would risk

21  circumvention of the law.  (*Id.*)  However, the FBI has not said what its assessments and mapping

22  intelligence are used for, in what situations they used, how the information relates to actual

23  criminal investigations, or how more knowledge regarding such information would allow

24  potential criminals to circumvent the law.  This is insufficient to justify withholding the

_____

25       [13]  The FBI's redactions are inconsistent.  For instance, some documents reveal the targets
     at issue, yet other targets are redacted without any explanation for the disparity.  (*See* Decl. Ex.
26   ¶ 17 & Ex. 7-6.)  The public has the right to know if it is being improperly targeted, and
     disclosure would allow those individuals to pursue any appropriate legal remedies for
27   unconstitutional conduct.

28

information.  *See Powell v. U.S. DOJ,* 584 F. Supp. 1508, 1522 (N.D. Cal. 1984) (where documents pertained to group's effort to publicize constitutional questions regarding a criminal prosecution, court failed "to see any rational nexus between this sort of general surveillance and information-gathering and the enforcement of a federal law").

Further, at least some of the documents claiming this exemption that the "investigative activities" are "closed" and no longer pending, defeating application of Exemption 7(E).  (*See* Decl. ¶ 16 & Ex. 7-5; *Robbins Tire & Rubber Co.*, 437 U.S. at 235 (noting that the government must show that the law enforcement effort is ongoing).  The FBI Declaration fails in this regard, and therefore, the FBI cannot show that the information it withheld under Exemption 7(E) would risk circumvention of the law or why continued redactions of such information is still needed.

### d.      Information Regarding Recruiting Informants Is Improperly Withheld.

The FBI has redacted significant information regarding its purported "recruitment" of potential "informants" under Exemption 7(E).  According to the FBI, revealing such information would provide groups who are suspected of criminal wrongdoing with information as to how the FBI recruits internal informants, which may aid the groups in detecting informants currently operating within their ranks.  (Decl. ¶ 20 & Ex. 10 (Index for Docs. 264 to 271) ("[r]eleasing this information would provide criminals with an in-depth understanding of FBI strategy.  Given this understanding, criminals could structure their activities in a manner that would misdirect the FBI, prevent disruption, and avoid detection.").)

However, the FBI does not show how revealing such information would give criminals (as opposed to the innocent, confidential human source themselves) a leg up. (*See id.* ("Various redaction blocks on MC-1479 through MC-1549 protect source recruitment and validation methods").) [14]  It is not enough to simply state that producing particular documents will risk circumvention of the law without even indicating how such circumvention will result.  The

---

[14] The technique of using immigration vulnerabilities to coerce people into acting as informants is known. *See* http://www.miaminewtimes.com/2009-10-08/news/unholy-war-fbi-tries-to-deport-north-miami-beach-imam-foad-farahi-for-refusing-to-be-an-informant/3/ (news article about the FBI seeking deportation of someone who resisted being recruited).

1   speculation provided by the FBI that criminals could detect informants within their ranks is not

2   supported by evidence and is, thus, insufficient to justify their redactions. *See Davin*, 60 F.3d at

3   1064 (holding that the government must provide the district court with additional facts to support

4   exempted documents regarding informants under Exemption 7(E)).

5          Because the government has failed to meet its burden of withholding the documents

6   identified in Exhibit 7, and indeed its submissions demonstrate that the documents were

7   improperly withheld because Exemption 7 does not apply to those documents, the documents

8   should be produced.[15]  Only about 10% of the documents withheld were sampled on the *Vaughn*

9   index, so other documents similar to the ones in Exhibit 7 that were not part of the sampling

10  remain improperly withheld.  Accordingly, the FBI should be required to produce any documents

11  that it did not index in its *Vaughn* submission but that it withheld or redacted based on the same

12  improper grounds.

13  **IV.    THE FBI HAS NOT PROVIDED REASONABLY SPECIFIC DESCRIPTIONS OF
           WITHHELD DOCUMENTS IDENTIFIED IN EXHIBIT 8.**
14

15         For many documents in the FBI's *Vaughn* index, the FBI has failed to meet its obligations

16  to provide an adequate description of the withheld documents.  These documents are specifically

17  identified in Plaintiffs' Exhibit 8.  (Decl. ¶ 18 & Ex. 8.)  To the extent the Court does not

18  separately order the production of these documents, the Court should order the FBI to provide

19  adequate descriptions for these documents in a supplemental *Vaughn* index.

20         The FBI has an obligation to provide adequate descriptions so that the Plaintiffs can

21  distinguish between protected and unprotected information.  *See Pub. Citizen Health Research*

22  *Gro. V. FDA*, 185 F.3d 898, 906 (D.C. Cir. 1999).  "[T]he goal should be to allow the court to

23  understand the withheld information to the extent necessary to address the merits." *Judicial*

24  *Watch,* 449 F.3d at 150 (remanding the case for further explanation of vague descriptions under

25  _____

26         [15]  In the alternative, the Court may exercise its discretion and conduct an *in camera*
    review of documents listed in Exhibits 7, 8, and 9 to determine *de novo* whether Exemption 7
27  applies.  See 5 U.S.C. § 552(a)(4)(B); *EPA v. Mink*, 410 U.S. 73, 93 (1973).  Plaintiffs agree to
    such review by Magistrate Judge Beeler, should the Court deem that appropriate.

28

various exemptions).  While the *Vaughn* narratives here are voluminous (ECF No. 114-3), they are vague and unclear, consisting largely of repetitive and conclusory text copied and pasted over the hundreds of pages.  This text includes the following:

- "redaction blocks protect sensitive FBI intelligence gathering and threat assessment techniques used in unique contexts" (Decl. ¶ 20 & Ex. 10 (Index for Docs. 137 to 159));

- "contains a sensitive investigative technique the FBI uses to gather intelligence" (*id.* (Index for Docs. 181 to 185));

- "numerous redaction blocks protect sensitive FBI intelligence gathering and threat assessment strategies and methods" (*id.* (Index for Docs. 274 to 280)); and

- "the FBI has protected specifics concerning FBI investigative strategies" (*id.* (Index for Docs. 358 to 359)).

Many of these documents are withheld in full, depriving Plaintiffs of the opportunity to assess the context of the withheld information or the validity of the withholdings.

Devoid of context and repeating legal conclusions as fact, these entries fail to satisfy the FBI's burden of providing sufficient information to "understand the withheld information" or ascertain the "merits" of the claimed exemptions, as is required.  *Judicial Watch*, 449 F.3d at 150. The FBI should be required to produce adequate descriptions of the withheld documents in the index entries listed in Exhibit 8.  *Id.*

## V.    THE FBI FAILED TO PROVIDE "REASONABLY SEGREGABLE" PORTIONS OF RESPONSIVE RECORDS.

The Court should compel the FBI to produce segregable portions of documents identified in Exhibit 9.  Agencies have a duty to provide "[a]ny reasonably segregable portion of" records that are not exempt.  5 U.S.C. §552(b)(9).  To meet its segregability burden when withholding documents in full, rather than redacting exempt information, the FBI must provide detailed affidavits describing how the FBI made its segregability determination, offer a "factual recitation" of why materials withheld in full are not reasonably segregable, and indicate "what proportion of the information in the document is non-exempt and how that material is dispersed throughout the document."  *Abdelfattah v. U.S. Dep't of Homeland Security*, 488 F.3d 178, 187 (3rd Cir. 2007).

1    The FBI admits to withholding 47,794 pages in full.  (Hardy Dec. ¶ 84.)  Although the

2    declaration describes the process by which the FBI made its segregability determination, it does

3    not address what proportion of each of the documents withheld in full contain non-exempt,

4    segregable information, how such information is dispersed through each document, or why it

5    cannot be segregated and disclosed.  Without this required "factual recitation" regarding each

6    document, the FBI fails to carry its segregability burden.  *See id*.; *Davin*, 60 F.3d at 1052.  The

7    FBI contends that releasing information in these documents would trigger "foreseeable harm," but

8    it offers only conclusory assertions that no non-exempt material can be segregated.  Numerous

9    other documents are either overly redacted or redacted in their entirety, again without the required

10   explanation from the FBI, suggesting that reasonably segregable information was not fully

11   redacted.  (*See* Decl. ¶ 19 & Ex. 9.)  For instance, according to the FBI, several documents are

12   almost wholly redacted on the basis that the "the specifics" of the FBI's "strategies for

13   identifying, managing, and recruiting suitable confidential human sources" described therein are

14   unknown.  (*See id*. ¶ 20 & Ex. 10 (Index for Docs. 380, 382-384, 391, 395, 398, 400).)

15   Finally, the *Vaughn* index represents only a small sample of the universe of withheld

16   documents.  While the FBI' was producing the *Vaughn* indices, it produced thousands of pages of

17   new or newly un-redacted documents, suggesting that many other documents remain improperly

18   withheld in the 90% of documents not listed in the present *Vaughn* index.

19   **VI.    CONCLUSION**

20   For the foregoing reasons, Plaintiffs respectfully request that the Court deny the FBI's

21   motion for summary judgment and grant Plaintiffs' cross-motion for summary judgment.

22

23   Dated:  November 4, 2014                              Respectfully submitted,

24

25                                                        By:  */s/  Somnath Raj Chatterjee*

26                                                        SOMNATH RAJ CHATTERJEE
                                                          SChatterjee@mofo.com
27                                                        ANGELA E. KLEINE
                                                          AKleine@mofo.com
28                                                        DEBRA URTEAGA

DUrteaga@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone:  415.268.7000
Facsimile:  415.268.7200

JULIA HARUMI MASS
JMass@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California 94111
Telephone:  415.621.2493
Facsimile:  415.255.8437

NASRINA BARGZIE
nasrinab@advancingjustice-alc.org
ASIAN LAW CAUCUS - ASIAN
AMERICANS ADVANCING JUSTICE
55 Columbus Avenue
San Francisco, California 94111
Telephone:  415.896.1701
Facsimile:  415.896.1702

Attorneys for Plaintiffs

THE AMERICAN CIVIL LIBERTIES UNION
OF NORTHERN CALIFORNIA, ASIAN LAW
CAUCUS - ASIAN AMERICANS
ADVANCING JUSTICE, AND THE SAN
FRANCISCO BAY GUARDIAN

**ATTESTATION OF E-FILED SIGNATURE**

I, Debra Urteaga, am the ECF User whose ID and Password are being used to file this Notice of Motion and Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment; Memorandum of Points and Authorities.  In compliance with General Order 45, X.B., I hereby attest that Julia Harumi Mass, Nasrina Bargzie, S. Raj Chatterjee, Angela Kleine, and Lynn Y. Lee have concurred in this filing.

Dated:  November 4, 2014 _____
                                                          */s/ Debra Urteaga*
                                                          Debra Urteaga

sf-3473960