UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE AMERICAN CIVIL LIBERTIES UNION OF NORTH CALIFORNIA, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>　　　　Defendant. | Case No. 10-cv-03759-RS<br><br>**ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT** |

## I.   INTRODUCTION

This action arises from Freedom of Information Act ("FOIA") requests filed by plaintiffs the American Civil Liberties Union of Northern California (ACLU), the Asian Law Caucus, and the San Francisco Bay Guardian regarding defendant FBI's alleged surveillance activities of Muslim and other ethnic and racial communities in Northern California. Plaintiffs filed two FOIA requests in early 2010, and commenced this lawsuit that August. Over the last four years, the FBI has produced responsive documents in accordance with a schedule agreed to by the parties.

Plaintiffs now aver that the FBI withheld and redacted records without proper justification, and seek declaratory and injunctive relief under FOIA, 5 U.S.C. § 552. At issue in the parties' cross-motions for summary judgment is whether the FBI has (1) met its burden to demonstrate that it properly withheld documents for law enforcement purposes under 5 U.S.C. § 552(b)(7), also referred to as "Exemption 7"; (2) provided reasonably specific *Vaughn* index descriptions; and (3) adequately explained why non-exempt materials withheld in full are not reasonably segregable.

This order addresses only a threshold matter dispositive of the first issue—specifically, whether the FBI has carried its burden under Exemption 7 to show a "rational nexus" between the enforcement of a federal law, and the documents it claims are exempt from disclosure. Only if the

FBI's actions meet this standard may the FBI properly withhold or redact documents under Exemption 7's subsections. Because the FBI's explanation of the link between its law enforcement activities and the particular documents withheld fails to meet the "rational nexus" standard as it is applied in the Ninth Circuit, the FBI is altogether precluded from withholding information under Exemption 7.

## II.   BACKGROUND

Concerns regarding the effects of FBI surveillance efforts on the civil liberties of individuals and groups in certain ethnic and religious communities prompted plaintiffs to file the two FOIA requests at issue. In March 2010, plaintiffs requested the release of records concerning the FBI's investigation and surveillance of Muslim communities in Northern California. Specifically, plaintiffs demanded records regarding FBI policies and practices as to use of informants; carrying out assessments; legal reasoning materials; cultural competency training materials; use of race, religion, language, or ethnicity for law enforcement purposes including geo-mapping and domain management; the FBI Citizenship Academy; and the FBI Junior Agent Program . They further requested information regarding investigations of mosques and Muslim cultural or community centers, their members and leaders; and targets and outcomes of law enforcement activities in Northern California as compared to the rest of the country. FAC, Exh. A.

Plaintiffs' second request, filed in July 2010, concerned the collection and use of racial and ethnic data in Northern California. It asked for policies, procedures, and/or maps regarding types of racial and ethnic information the agency can or cannot collect, map, or use; types of racial and ethnic information the FBI has collected; collected information on "ethnically-oriented" businesses or facilities; types of characteristics, according to the Domestic Investigations and Operations Guide ("DIOG"), believed to be associated with a particular criminal or terrorist element of an ethnic community; uses of racial and ethnic data; the number of mapped communities in Northern California; and collected maps and community descriptions. FAC, Exh. B. The FBI conceded that both requests warranted expedited processing, and sent followup letters

in response to each noting that it had begun searching for responsive records.

Having received no disclosures, plaintiffs commenced this action on August 24, 2010 with regard to their first FOIA request, and later amended their complaint to incorporate the second. Plaintiffs were denied their request for a preliminary injunction in November. The case was then referred to a magistrate judge for mediation, and the parties agreed on a production schedule for release of responsive records. From December 2010 through June 2012, the FBI released over 50,000 full or redacted pages of responsive records to the plaintiffs in 20 monthly installments, withholding about 47,794 pages on grounds of asserted FOIA exemptions.

Following production, the parties agreed upon a sampling methodology to limit litigation going forward. The FBI agreed to provide plaintiffs *Vaughn* write-ups for the FBI's application of FOIA exemptions for a portion of the responsive documents, rather than the entire contents of production. For the first portion of the write-ups, Plaintiffs selected documents for *Vaughn* indexing. Then, the FBI indexed every withheld in-full document located at 500 page intervals. For the last portion, the FBI selected documents at each 1,000th page. The FBI then prepared narrative *Vaughn* write-ups that described the types of documents withheld and the redactions within the sample and the exemptions applied.

The parties thereafter agreed to narrow the issues in advance of motions for summary judgment. Plaintiffs agreed to refrain from challenging FOIA Exemptions 1, 3, 4, 6, 8, and 9 but reserved the right to challenge other exemptions and the adequacy of the *Vaughn* index descriptions. The FBI filed a motion for summary judgment and plaintiffs cross-moved. Each side contests whether the FBI improperly withheld documents under Exemption 7; provided reasonably specific *Vaughn* index descriptions; and failed to explain why non-exempt materials withheld in full are not reasonably segregable. The sole question considered here is whether the FBI's actions meet Exemption 7's threshold requirement.

### III.   LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the moving party is not required to disprove matters on which the non-moving party will have the burden of proof at trial. *Id*. at 325.

If the moving party meets its burden, the non-moving party must "set forth by affidavit or otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc., v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324). This burden requires more than the "mere scintilla of evidence." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). The non-moving party must provide "evidence on which the jury could reasonably find for the [non-moving party]." *Id*.

Since the facts in FOIA cases are rarely in dispute, cases are often decided on motions for summary judgment. *See Nat'l Wildlife Fed'n v. U.S. Forest Serv*., 861 F.2d 1114 (9th Cir. 1988). FOIA was enacted to "facilitate public access to Government documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). Thus, there is a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp*., 493 U.S. 146, 151-152 (1989) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976)). The Supreme Court has explained that "these exemptions must be narrowly construed." *John Doe Agency*, 493 U.S. at 154.

The government agency bears the burden to prove a particular document or redaction is shielded from disclosure by a FOIA exemption. *Ray*, 502 U.S. at 173. "[G]overnment agencies seeking to withhold documents requested under FOIA [are] required to supply the opposing party and the court with a '*Vaughn* index' identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991). The agency may also rely on detailed affidavits so long as they are not "conclusory" or "generalized allegations" of exemptions. *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995). Even if an exemption is applicable, an agency may only withhold the information to which the

exemption applies. *Yonemoto v. VA*, 686 F.3d 681, 688 (9th Cir. 2012). Thus, the agency is required to provide all "reasonably segregable" portions of the records to the requester. 5 U.S.C. § 552(b).

## IV.    DISCUSSION

Under Exemption 7, an agency may withhold "records or information compiled for law enforcement purposes," but only to the extent that disclosure will result in one of the six types of harms enumerated in its subsections. 5 U.S.C. § 552(b)(7). To claim any of these subsections applies, the agency must first satisfy the threshold requirement that the withheld or redacted records were "compiled for law enforcement purposes." *Id.* Meeting this standard requires that the government agency serves a legitimate law enforcement function, and has established a "'rational nexus' between enforcement of federal law and the document for which [a law enforcement] exemption is claimed." *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995).

Courts must accord a degree of deference to an agency's decision to investigate. *Rosenfeld*, 57 F.3d at 808. It is clear under Ninth Circuit authority, however, that an adequate showing of "rational nexus" nevertheless requires the defendant agency to link its decision to withhold information to the enforcement of a particular provision of federal law. *See Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 741 (9th Cir. 1979) (ruling against Exemption 7 applicability because although the agency was "clearly within its rights" to investigate, it did not show "that the investigation involved the enforcement of any statute or regulation within the authority of the [agency]"); *see also Rosenfeld*, 57 F.3d at 806 (applying *Church of Scientology* in a case involving documents compiled about the Free Speech Movement at University of California ("UC"), Berkeley, and finding that "conspicuously absent" from wrongly withheld documents was "any connection to any possible criminal liability"). Indeed, "generalized monitoring and information-gathering" are not sufficient justifications to apply Exemption 7. *Rosenfeld*, 57 F.3d at 809 (quoting *Lamont v. Dep't of Justice*, 475 F. Supp. 761, 775 (S.D.N.Y. 1979)). Nor may asserted purposes be pretextual. *Weiner*, 943 F.2d at 986 (9th Cir. 1991) (finding the FBI's

reliance on the Civil Obedience Act and Anti-Riot Act for withholding documents about investigations of John Lennon insufficient because wholesale citation to such broad statutory schemes encompassed too wide a variety of conduct to inform the plaintiff of the FBI's underlying law enforcement purpose); *see also Rosenfeld*, 57 F.3d at 809 (concerning the FBI's continued investigation of Robert Kerr, then-UC Chancellor, even after he was no longer being vetted for a White House appointment).[1]

The FBI has a clear law enforcement mandate. Its authority derives from 28 U.S.C. §§ 509, 533, and 534, which permit the FBI to investigate and gather intelligence; and from the FBI's DIOG.[2] *See* Hardy Decl. ¶ 72; Supp. Hardy Decl. ¶ 5. It therefore need only establish a rational nexus between the enforcement of a federal law and the documents for which it claims Exemption 7 applies.

The evidence the FBI has placed on the record fails to meet this burden. The Supplemental Hardy Declaration describes at length how the types of documents the FBI withheld advance law enforcement interests. It, for example, attests that the FBI's community outreach efforts serve the purpose of establishing working relationships with community partners whose cooperation is essential to law enforcement missions. Supp. Hardy Decl. ¶ 10. Informants help law enforcement learn of dangerous illegal activity, *id.* at ¶ 20; and training materials make FBI personnel more effective at detecting and preventing it, *id.* at ¶ 7. In short, the FBI employs many various techniques to combat unlawful activity, some of which, if publicly disclosed, would undermine their effectiveness.

---

[1] The FBI has argued that both *Weiner* and *Rosenfeld* arose from the withholding of solely investigatory records, and therefore differ meaningfully from the present instance, which also concerns policy and training documents. There is no indication in the statute or case law, however, that "rational nexus" doctrine permits the drawing of such distinctions.

[2] The DOIG "authorizes the FBI to engage in intelligence analysis and planning to facilitate and support investigative activities and other authorized activities." DOIG (2011 ed.) § 15.1. It was originally issued in 2008 to implement the Attorney General's Guidelines for Domestic FBI Operations ("AGG-DOM"), a set of protocols that apply to FBI investigative and intelligence collection activities within the United States, its territories, or outside the territories of all countries.

That this may well be true does not, without more, permit the FBI to apply Exemption 7 to withhold or redact information about such tactics, however.  Neither the Hardy declarations nor the FBI's pleadings tether the activities the withheld documents concern to the enforcement of any particular law.  *See ACLU v. FBI*, 2014 WL 4629110, at *6 (finding that while defendant had identified two criminal statutes it aimed to uphold and thereby demonstrated a legitimate law enforcement objective, it nevertheless failed to demonstrate a relationship between its activities and enforcement of the statutes; the statement that the investigation regarded "potential criminal activity" was insufficient).  The FBI's refrain at oral argument that many of the withheld documents do not relate to particular investigations, and thus cannot be linked to any particular provision of law, only serves to emphasize the point that Exemption 7 is not the appropriate umbrella under which to shield these documents from public view.

## V. CONCLUSION

For all of the aforementioned reasons, the FBI may no longer employ Exemption 7 to withhold the documents at issue here, and the question of whether Exemption 7's subsections apply need not be reached.  The parties are hereby ordered to meet and confer, and to file with the Court within thirty (30) days of the date of this order a case management plan.

**IT IS SO ORDERED**.

Dated: March 23, 2015

_____
RICHARD SEEBORG
United States District Judge